IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND KNAPP,<br>          Plaintiff,<br>   v.<br>SAGE PAYMENT SOLUTIONS, INC., et al.,<br>          Defendants. | Case No. 17-cv-03591-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 43 |

Before the Court is defendant Sage Payment Solutions, Inc.'s ("Sage") "Motion to Dismiss the Second Amended Complaint," filed November 17, 2017. Plaintiff Raymond Knapp ("Knapp") has filed opposition, to which Sage has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.

**I. Factual and Procedural Background**

Knapp alleges defendant Sage, "a Delaware Corporation headquartered in Virginia, . . . is in the business of providing payment processing services." (See SAC ¶¶ 2, 4). Knapp further alleges Sage and defendant Merchant Service, Inc. ("MSI), "a Delaware Corporation" (see id. ¶ 2),[1] entered into a contract under which MSI agreed to "advertise for and on behalf of" Sage (see id. ¶¶ 8-9),[2] and that MSI, acting thereunder as Sage's agent, sent him three unsolicited faxes.

Based thereon, Knapp asserts two Causes of Action under the Telephone Consumer

---

[1] To date, MSI has not been served.

[2] Although the contract is not otherwise identified in the SAC, it is undisputed that the "Processing Services Agreement" submitted by Sage in support of the instant motion is the contract on which Knapp relies.

1 Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., the first alleging "[n]egligent

2 [v]iolations," and the second alleging "[k]nowing and/or [w]illful [v]iolations."  (See SAC.)

3 By the instant motion, Sage moves to dismiss the SAC, as alleged against Sage,

4 pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. Dismissal Pursuant to Rule 12(b)(2)

### A. Legal Standard

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  Where a defendant challenges personal jurisdiction, the plaintiff bears the burden to establish the forum court's personal jurisdiction over such defendant.  See Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003).

In resolving the question of personal jurisdiction, "[t]he court may consider evidence presented in affidavits to assist it in its determination," see Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001), and where, as here, the defendant's motion is based on "written materials rather than an evidentiary hearing," the plaintiff "need only make a prima facie showing of jurisdictional facts," see CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation and citation omitted).  Although a plaintiff, in order to meet his/her burden, "cannot simply rest on the bare allegations of [his] complaint" if those allegations are contradicted by affidavit, such allegations, if uncontroverted, "must be taken as true," and any factual dispute must be "resolv[ed] . . . in the plaintiff's favor."  See id.  (internal quotation and citation omitted).

Where no federal statute authorizes personal jurisdiction, the district court applies the law of the forum state.  See id.  Here, "[b]ecause California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800–01 (9th Cir. 2004).

"For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the

2

1  . . . forum," see CollegeSource, 653 F.3d at 1073 (internal quotation and citation omitted), and depending on the nature and extent of its contacts with the forum, "a defendant may be subject to either general or specific personal jurisdiction." See Easter v. Am. W. Fin., 381 F.3d 948, 960 (9th Cir. 2004) "A defendant is subject to general jurisdiction only where the defendant's contacts with a forum are substantial or continuous and systematic. See id. (internal quotation and citation omitted). "Specific jurisdiction applies if (1) the defendant has performed some act or consummated some transaction within the forum state or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." See id. at 960-61. (internal quotation and citation omitted).

**B. Discussion**

In the instant case, Knapp relies solely on specific jurisdiction. In particular, Knapp contends MSI's forum-related conduct can be attributed to Sage under three separate theories of agency: classical agency, apparent authority, and ratification. The Court addresses each such theory in turn.

**1.  Classical Agency**

"For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" See Mavrix Photographs, LLC v. Livejournal, Inc., 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01, cmt. c (Am. Law Inst. 2006)).

Authority may be either "express or implied." See Salyers v. Metro. Life Ins. Co., 871 F.3d 934, 940 (9th Cir. 2017). Express authority "derives from an act specifically mentioned to be done in a written or oral communication." See id. (internal quotation and citation omitted). Implied authority "comes from a general statement of what the agent is supposed to do; an agent is said to have the implied authority to do acts consistent with that direction." See id. (internal quotation and citation omitted).

Here, Knapp does not contend MSI had express authority to send the challenged

3

faxes; rather, Knapp argues, Section 2(a) of the PSA, in which MSI agreed to "actively solicit prospective Merchants" for Sage (see Bridgewater Decl. Ex. 1 § 2(a)), afforded MSI implied authority to send the challenged faxes.

In response, Sage first argues MSI did not act with implied authority because the challenged faxes were sent without prior approval, in violation of Section 5 of the PSA, which section provides: "All promotional materials, for [Sage] products and services, used by [MSI] must be approved by SPS before use." (See Bridgewater Decl. Ex. 1 § 5.) In support of its position, Sage cites two cases, in both of which the alleged claim was, as here, based on the plaintiff's receipt of unsolicited faxes. See Bridgeview Health Care Center, Ltd. v. Clark, 816 F.3d 935, 936 (7th Cir. 2016); Helping Hand Caregivers, Ltd. v. Darden Restaraunts, Inc., No. 14-CV-10127-MSS, 2016 WL 7384458, at *1 (N.D. Ill. Dec. 21, 2016). Knapp's reliance thereon is, however, unavailing.

In those cases, the contractual provisions assertedly violated either restricted the pool of recipients to whom the promotional materials could be sent, or the means by which such promotional materials could be transmitted. See Bridgeview Health Care Center, Ltd., 816 F.3d at 939 (finding alleged agent, hired to send 100 faxes within a 20-mile radius, did not act with implied authority to send nearly 5000 faxes beyond limited area); Helping Hand Caregivers, Ltd., 2016 WL 7384458, at *4 (finding alleged agent, authorized to conduct email advertising only, did not act with implied authority to send faxes). Here, by contrast, Section 5 of the PSA, the provision assertedly violated, does not pertain to the manner in which the promotional materials were to be sent, but, rather, to the content of those promotional materials, which content is not implicated by the instant claims.

Sage next contends MSI did not act with implied authority because the challenged faxes were sent in violation of Section 2(b) of the PSA, which section requires MSI to "fully comply with . . . all laws and regulations pertaining to the services performed by and the activities of [MSI]." (See Bridgewater Decl. Ex. 1 § 2(b).) In support of its argument, Sage cites Kern v. VIP Travel Services, No. 16-CV-8-JTN, 2017 WL 1905868 (W.D.

4

1 Mich. May 10, 2017), in which the district court found the alleged agent did not have
2 authority to make telephone calls in violation of the TCPA where the agreement there at
3 issue, while affording the alleged agent "full power and authority" to perform its work, also
4 expressly required such entity to "comply with all applicable laws, including federal 'Do
5 Not Call' laws," and to "comply with [the alleged principal's] do-not-call policy." See id. at
6 *6. Although, in Kern, the court, given such contractual language, found the alleged
7 agent "could not have reasonably believed" the defendant had given it authority to make
8 the calls at issue therein, this Court questions whether a far more general provision, such
9 as that included in Section 2(b) of the PSA, suffices to preclude a finding of implied
10 authority.

11 In any event, even assuming, arguendo, MSI acted with implied authority when it
12 sent the challenged faxes, Knapp, as discussed below, has failed to show MSI, in
13 sending the challenged faxes, was acting as Sage's agent.

14 For purposes of "determining whether an agency relationship exists," see Jones v.
15 Royal Admin. Servs., Inc., 866 F.3d 1100, 1105 (9th Cir. 2017) (internal quotation and
16 citation omitted), the Ninth Circuit looks to the following ten factors:

> 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

See id. at 1106 (alteration in original). Applying the above-referenced factors, the Court finds Knapp has failed to show an agency relationship existed between Sage and MSI.

**(a) First Factor: Control exerted**

As noted, "'[a]n essential element of agency is the principal's right to control the agent's actions.'" See Hollingsworth v. Perry, 133 S. Ct. 2652, 2666 (2013) (quoting Restatement (Third) of Agency § 1.01, cmt. f). "Generally, a principal is not vicariously liable for the actions of an independent contractor, because the principal does not have

5

sufficient control over an independent contractor." See Jones, 866 F.3d at 1105.

Here, as to the first factor, Knapp cites to the following provisions in the PSA: (1) "[m]erchants introduced to [Sage] by [MSI] shall meet the underwriting guidelines published by [Sage], as amended from time to time by [Sage]" (see Bridgewater Decl. Ex. 1 § 2(a)(i)); (2) "[MSI] will . . . obtain and submit [to Sage], as appropriate any information [Sage] may require" (see id. § 2(a)(ii)); (3) "[Sage] . . . may conduct financial and procedural audits and/or reviews of [MSI] at any time during the terms of [the PSA] pertaining to the services performed by and activities of [MSI] under [the PSA]" (see id. § 2(f)); and (4) "[MSI] shall make available promptly to [Sage] . . . all records pertaining to the services performed by and the activities of [MSI] under [the PSA] as requested by [Sage]" (see id. § 2(g)).[3]

As Sage points out, however, Sage did not retain or exercise a right to "set quotas for the number or amount of sales [MSI] must make" or to "control the hours that [MSI] work[ed]," nor did Sage "supervise" MSI "in the course of [its] day-to-day activities" (see Bridgewater Decl. ¶¶ 5-6) and nothing in the PSA suggests Sage had a right to do so. Under such circumstances, Knapp has shown Sage had only "limited control" over MSI's marketing activities. See Jones, 866 F.3d at 1106 (finding defendant had "only limited control" over telemarketer where defendant required telemarketer to keep records, give defendant weekly reports, collect payments on behalf of defendant, and obtain defendant's approval before using sales materials, but defendant did not "have the right to control the hours the [alleged agent] worked," or to "set quotas for the number of calls or sales the [alleged agent] had to make").

The first factor thus weighs against a finding of agency. See id. (identifying, among factors supporting independent contractor status, defendant's "limited control" of alleged agent).

---

[3] Additionally, as Knapp notes in connection with his arguments pertaining to apparent authority but not control, the PSA requires MSI to obtain approval of "[a]ll promotional material . . . before use." (See id. § 5.)

6

**(b) Second Factor: Distinct occupation**

As to the second factor, Sage points to undisputed evidence showing MSI is an independent business engaged in the distinct occupation of marketing payment processing services. (See Bridgewater Decl. ¶ 8 (describing MSI as business separate and apart from Sage); ¶ 15 (stating MSI informed him it was "engaged in marketing efforts with respect to a number of other payment processing companies during December 2016 and January 2017").)

The second factor thus weighs against a finding of agency. See Jones, 866 F.3d at 1106 (finding second factor "strongly suggested" entity hired to sell defendant's goods was independent contractor where entity provided similar services to "many different clients" and was business "separate and apart from [defendant]").

**(c) Third Factor: Supervision**

As to the third factor, the undisputed evidence shows Sage did not supervise MSI's marketing efforts. (See Bridgewater Decl. ¶ 6 (stating "Sage [did] not supervise [MSI] in the course of [MSI's] day-to-day activities".)

The third factor thus weighs against a finding of agency. See Jones, 866 F.3d at 1106 (finding, third factor "favor[ed] finding . . . telemarketers were independent contractors" where defendant "provided some training and oversight at call center" and defendant's president visited call center "about a dozen times" but defendant did not "directly supervise" calls).

**(d) Fourth Factor: Skill required**

As to the fourth factor, the record before the Court contains no evidence pertaining to the skill required to perform the services MSI provides.

The fourth factor thus does not inform the Court's analysis.

**(e) Fifth Factor: Tools and instrumentalities**

As to the fifth factor, the evidence, again undisputed, shows Sage did not provide MSI with tools, instrumentalities, or a place of work. (See Bridgewater Decl. ¶ 6 (stating Sage did not provide "phone lines, computers, internet services, office space, or any

7

1 other tools [MSI used] in connection with [its] efforts to market Sage's products and
2 services").)

3 The fifth factor thus weighs against a finding of agency. See Jones, 866 F.3d at
4 1107 (finding fifth factor weighed in favor of independent contractor status where
5 defendant provided "some tools and instrumentalities necessary" for alleged agent to
6 perform services, but alleged agent "suppli[ed] most of the tools and instrumentalities")
7 (internal quotation and citation omitted).

**(f) Sixth Factor: Length of time employed**

As to the sixth factor, the undisputed evidence shows the PSA, as set forth therein, remained in effect for three years and automatically renewed thereafter for successive one-year periods, with each party retaining the right to terminate the agreement upon sixty days notice given prior to the expiration of the initial or renewal term. (See id. Ex. 1 § 6(a).)

The sixth factor thus weighs, at most, only slightly in favor of a finding of agency. See Jones, 866 F.3d at 1107 (noting, although "[t]hree years is not a particularly short period of time, . . . designated impermanency of the relationship supports a finding of independent contractor status"; distinguishing "permanent working arrangement . . . under which [alleged agent] may continue as long as [its] performance is satisfactory") (internal quotation and citation omitted).

**(g) Seventh Factor: Method of payment**

As to the seventh factor, the evidence is undisputed that MSI was not paid for the time it worked, but, rather, a "form of monthly commission" based on the revenue generated by the contracts Sage entered with merchants solicited by MSI. (See Bridgewater Decl. ¶ 4; see also id. Ex. 1 § 8(a).)

The seventh factor thus weighs against a finding of agency. Cf. Jones, 866 F.3d at 1106 (describing as "strong indicator" of independent contractor status, payment based on "commission for each sale, rather than for the time [alleged agent] worked").

**(h) Eighth Factor: Regular business of employer**

As to the eighth factor, although it is undisputed that Sage hires third-party entities to market its services (see Bridgewater Decl. ¶ 4), Sage is in the business of selling "payment processing and merchant acquiring solutions" (see id. ¶ 2), and, consequently, marketing is a regular part of Sage's business.

The eighth factor thus weighs in favor of a finding of agency. See Jones, 866 F.3d at 1108 (finding, where sales were "a regular part of [defendant's] business," eighth factor "tend[ed] to favor finding an agency relationship," even though defendant "contracted out all its direct sales . . . instead of hiring its own employees to sell its [products]").

**(i) Ninth Factor: Parties' subjective intent**

As to the ninth factor, the PSA provides: "The relationship of the parties hereto is that of independent parties contracting for services, and none other." (See id. Ex. 1 § 11; see also Bridgewater Decl. ¶ 15 (noting MSI described itself as providing its marketing services to "a number of other payment processing companies").) Additionally, the PSA requires MSI to "identify itself in all promotional materials as an independent sales representative." (See id. § 5.) These provisions expressly reflect the signatories' subjective intent that MSI operate as an independent contractor rather than as Sage's agent.

The ninth factor thus weighs against a finding of agency. See Jones, 866 F.3d 1108 (finding, even where record "[did] not clearly evidence the subjective intent of the parties," fact that alleged agent provided its services to multiple companies "indicat[ed]" alleged agent's "intent was to . . . operate as independent contractor[]").

**(j) Tenth Factor: Business**

Lastly, as to the tenth factor, there is no dispute that Sage is a business. The tenth factor thus weighs in favor of a finding of agency. See id. (holding, where alleged principal is "a business," tenth factor "favors finding an agency relationship").

Accordingly, as set forth above, the relevant factors, with limited exception, weigh against a finding of agency, and, consequently, Knapp has failed to meet his burden as to

classical agency. The Court next turns to Knapp's arguments regarding apparent authority and ratification.

### 2. Apparent Authority

"Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." Salyers, 871 F.3d at 940 (internal quotation and citation omitted). Apparent authority "cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it, but must be established by proof of something said or done by the [alleged principal] on which [the plaintiff] reasonably relied." See NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity, 124 F.3d 1094, 1099 (9th Cir. 1997).

Here, Knapp alleges he "used the contact information listed on the [challenged faxes]" and "was directed to a Jody Lee ["Lee"] who claimed to be an account specialist for both [d]efendants." (See SAC ¶ 12.) Knapp argues Lee's comment was "authorized" by Sage pursuant to Section 5 of the PSA, which provides: "[MSI] shall identify itself in all promotional materials as an independent sales representative of SPS." (See Opp. at 14:8; Bridgewater Decl. Ex. 1 § 5). The Court is not persuaded.

First, Lee's comment was not made at a relevant time. It is undisputed that the challenged faxes did not contain any reference to Sage, and, indeed, Knapp alleges he "was not aware who was contacting him" until he spoke with Lee, (see SAC ¶ 12), which, it likewise is undisputed, occurred after his receipt of the challenged faxes and thus after the commission of the alleged violations. Consequently, when the alleged wrongful conduct occurred, i.e., when Knapp received the challenged faxes, he had no reason to believe such faxes were sent by an agent of Sage, let alone do anything in reliance thereon.

Second, even if Lee's comment had been made at a relevant time, her use of the description, "account specialist," is not enough to constitute a claim of authority to act as

Sage's agent.[4]  See Jones, 866 F.3d at 1105 (noting "[n]ot all relationships in which one person provides services to another satisfy the definition of agency") (internal quotation and citation omitted).

Third, even assuming Lee's comment sufficed as an apparent claim of such authority, Knapp has failed to show Sage permitted Lee to make such statement. The section of the PSA on which Knapp relies did not authorize MSI to identify itself as an "account specialist," but rather directed MSI to identify itself as an "independent sales representative" (see Bridgewater Decl. Ex. 1 § 5), with the apparent purpose of making clear to third parties that MSI was not acting as Sage's agent.

Accordingly, Knapp has failed to meet his burden as to apparent authority.

**3. Ratification**

"'Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.'" See Naiman v. Tranzvia LLC, No. 17-CV-4813-PJH, 2017 WL 5992123, at *13 (N.D. Cal. Dec. 4, 2017) (quoting Restatement (Third) of Agency § 4.01(1)).  A principal ratifies an act by "'(a) manifesting assent that the act shall affect the [principal's] legal relations, or (b) conduct that justifies a reasonable assumption that the [principal] so consents.'" See id. (quoting Restatement (Third) of Agency § 4.01(2)).  A principal is not bound, however, "by a ratification made 'without knowledge of material facts' about the agent's act." See id. (quoting Restatement (Third) of Agency § 4.06 cmt. b).

Here, Knapp argues, Sage ratified MSI's actions by "actively profit[ing] from its [a]greement with" MSI.  (See Opp. at 15:18-19.)

Although a party is deemed to have ratified an agent's conduct where, "knowing

---

[4] Knapp's reliance on Mey v. Monitronics Int'l, Inc., 959 F. Supp. 2d 927, 933 (N.D.W. Va. Aug. 14, 2013) is unavailing.  In particular, Mey is distinguishable on its facts, in that the description there at issue was "authorized dealer."  Moreover, the ruling therein was expressly "reject[ed]" by another court in that district.  See In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig., 223 F. Supp. 3d 514, 527-28 (N.D.W. Va. Dec. 22, 2016) (finding "fact that entities were permitted to hold themselves out as authorized dealers or some similar description [was] insufficient to hold the moving defendants" liable as principals).

11

the facts," such party "accepts the benefits of the agent's actions," see Prosser v. Navient Sols., Inc., No. 15-CV-01036-SC, 2015 WL 5168635, at *9 (N.D. Cal. Sept. 3, 2015) (internal quotation and citation omitted), there is nothing in the record to suggest Sage entered into any contract as a result of the challenged faxes or otherwise benefitted from MSI's violation of the TCPA. Indeed, the record before the Court reflects Sage's only action in response to MSI's conduct was to "instruct[] [MSI] . . . to immediately cease and desist any and all marketing with respect to Sage." (See Bridgewater Decl. ¶ 15.)

Moreover, even assuming, arguendo, Sage had obtained some benefit from MSI's allegedly wrongful conduct, Knapp has failed to show Sage had knowledge of that conduct before its receipt of any such benefit. The only evidence in the record in that regard is a declaration averring Sage "was not aware that MSI might have allegedly sent any fax solicitations until after [the instant] lawsuit was filed." (See Bridgewater Decl. ¶ 12.)

Accordingly, Knapp has failed to meet his burden as to ratification.

**C. Conclusion: Personal Jurisdiction**

For the reasons set forth above, the Court finds it lacks personal jurisdiction over Sage. See Williams v. Yamaha Motor Co., 851 F.3d 1015, 1024 (9th Cir. 2017) (holding district court lacked specific personal jurisdiction premised on agency theory where appellants "failed to make out a prima facie case for any such agency relationship").

**III. Dismissal Pursuant to Rule 12(b)(6)**

In light of the Court's ruling as to personal jurisdiction, the Court does not address herein Sage's arguments in support of dismissal under Rule 12(b)(6).

**IV. Conclusion**

For the reasons stated above, Sage's motion to dismiss is hereby GRANTED, and the SAC, as alleged against Sage, is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: February 1, 2018

MAXINE M. CHESNEY
United States District Judge

12